**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

TRUSTEES OF THE NEVADA RESORT ASSOCIATION – INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES AND MOVING PICTURE MACHINE OPERATORS OF THE UNITED STATES AND CANADA, LOCAL 720, PENSION TRUST, *et al.*,

Plaintiffs,

v.

NATIONAL CONVENTION SERVICES, *et al.*,

Defendants.

Case No. 2:23-cv-00118-RFB-NJK

**ORDER**

## I. INTRODUCTION

Before the Court is Plaintiffs Trustees of the Local 720 Pension Trust, Trustees of the Local 720 Wage Disability Trust, and Trustees of the Local 720 Apprentice and Journeyman Training and Education Trust (collectively "Plaintiffs") Motion for Default Judgment against Defendant National Convention Services. ECF No. 16. For the reasons discussed below, the Court grants the Motion for Default Judgment and enters judgment in favor of Plaintiffs against Defendant National Convention Services.

## II. FACTUAL BACKGROUND

Plaintiffs allege the following. Plaintiffs Trustees of the Pension Trust, Wage Disability Trust, and Training Trust serve as trustees of three express trusts created pursuant to written Declarations of Trust ("Trust Agreements") between the Nevada Resort Association and the International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of

the United States and Canada, Local 720 (hereinafter "Local 720"). The Trustee Plaintiffs are fiduciaries of the three express trusts as defined by ERISA section 3(21)(A), 29 U.S.C. § 1002(21)(A). The trusts are labor-management multiemployer trusts created and maintained pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. §186(c)(5).

Defendant National Convention Services ("NCS") is a Nevada domestic limited-liability company licensed to conduct business and domiciled in the state of Nevada, with its principal place of business in Las Vegas, Nevada. On or about October 7, 2016, Defendant executed a collective bargaining agreement with Local 720. The Collective Bargaining Agreement and Trust Agreements required Defendant to contribute monthly fringe benefit contributions to the Trusts and to report the names of the employees and their hours worked on a monthly basis. Defendant was obligated to permit the Trusts and their agents to conduct audits of Defendant's payroll and related records in order to determine if fringe benefit contributions had been properly paid.

On or about September 1, 2022, November 17, 2022, and January 4, 2023, Plaintiffs' counsel requested that Defendant submit documents to the Trusts' auditor, Rubin Brown, LLP, to conduct an audit of Defendant's payroll and related records from January 1, 2017, to June 30, 2022. NCS failed to respond or submit the documents. After filing the Complaint, Plaintiffs' counsel again sought the records on April 21, 2023. NCS submitted some of the requested documents. On December 14, 2023, and March 22, 2024, Plaintiffs' counsel again sought the additional records. Some time thereafter, the information needed to complete the audit was shared with Plaintiffs. The completed audit revealed that no additional contributions were owed.

Plaintiffs bring two Causes of Action, alleging that Defendant's refusal to produce all requested documents is a breach of the Collective Bargaining Agreement and Trust Agreements, and that NCS' actions constitute violations of ERISA. See 29 U.S.C. § 1145. Plaintiffs seek audit fees and attorney's fees.

## III. PROCEDURAL BACKGROUND

Plaintiffs filed a complaint against Defendants on January 23, 2023. ECF No. 1. By March 6, all Defendants were served. ECF Nos. 5, 6, 7, 8. On August 13, 2024, Plaintiffs voluntarily dismissed two individual defendants and filed a Motion for Entry of Clerk's Default as to

Defendant NCS. ECF Nos. 14, 15. On August 19, 2024, Plaintiff filed the instant Motion for Entry of Default Judgment. ECF No. 16. On August 20, the Clerk entered default against NCS. ECF No. 17.

**IV. LEGAL STANDARD**

The granting of a default judgment is a two-step process directed by Federal Rule of Civil Procedure 55. Eitel v. McCool, 782 F.2d 1470, 1471 (9th Cir. 1986). The first step is an entry of clerk's default based on a showing, by affidavit or otherwise, that the party against whom the judgment is sought "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). The second step is default judgment under Rule 55(b), a decision which lies within the discretion of the Court. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors which a court, in its discretion, may consider in deciding whether to grant a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of the substantive claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of a dispute of material fact, (6) whether the default was due to excusable neglect, and (7) the Federal Rules' strong policy in favor of deciding cases on the merits. Eitel, 782 F.2d at 1471–72.

If an entry of default is made, the Court accepts all well-pleaded factual allegations in the complaint as true; however, conclusions of law and allegations of fact that are not well-pleaded will not be deemed admitted by the defaulted party. DirecTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007). Additionally, the Court does not accept factual allegations relating to the amount of damages as true. Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977). Default establishes a party's liability, but not the amount of damages claimed in the pleading. Id.

**V. DISCUSSION**

**A. Jurisdiction and Service of Process**

Before entering default judgment against a non-appearing party, district courts have a duty to consider subject matter jurisdiction and personal jurisdiction. In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place.").

As a threshold matter, the Court finds it has subject matter jurisdiction over this case pursuant to 29 U.S.C. § 1132(e). See U.S.C. § 1132(e) ("[T]he district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the or by a participant, beneficiary, fiduciary, or any referred to in section 1021(f)(1) of this title."). Similarly, the Court may exercise personal jurisdiction over Defendant pursuant to 29 U.S.C. § 1132(e)(2), which authorizes bringing suit against a defendant "where the plan is administered, where the breach took place, or where a defendant resides or may be found ...." Id. § 1132(e)(2). In this case, Plaintiffs administer the relevant trusts in this district and Defendant is alleged to be a "Nevada limited-liability company licensed to conduct business and domiciled in the state of Nevada." Accordingly, the Court concludes it may properly exercise both subject matter and personal jurisdiction.

Courts must also determine whether there was sufficient service of process on the parties against whom default judgment is requested. See Mason v. Genisco Tech. Corp., 960 F.2d 849, 851 (9th Cir. 1992). In this case, the Court finds Defendant was adequately served under Federal Rule of Civil Procedure 4.

**B. Plaintiffs Have Satisfied the Procedural Requirements**

First, Plaintiffs satisfy the procedural requirements for a default judgment against Defendant. The Clerk of Court entered default against Defendant on August 20, 2024. See ECF No. 17. Plaintiffs submitted a declaration of counsel that satisfies the remaining procedural requirements of Local Rule 55-1. See Declaration of Michael A. Urban, ECF No. 16-1. The declaration states that Defendant is not an infant nor otherwise an incompetent person, and that the Servicemembers Civil Relief Act does not apply. Additionally, notice under Rule 55(b)(2) is excused because Defendant has not appeared. See Franchise Holding II, LLC. v. Huntington Restaurants Grp., Inc., 375 F.3d 922, 928 (9th Cir. 2004) (holding there was no appearance where the defendant did not file a motion with the court). Accordingly, Plaintiffs have complied with Local Rule 55-1's procedural requirements for obtaining a default judgment against Defendant.

**C. The Eitel Factors Favor Entering Default Judgment**

The Court next considers each Eitel factor and finds that granting default judgment against

Defendant is appropriate in this case.

To begin, the Court finds the first factor favors default judgment because Defendant has declined to defend this action. Defendant failed to answer the Complaint, filed almost a year ago, and failed to respond to Plaintiff's Motion for Default Judgment, filed almost four months ago. Because Defendant has failed to appear, Plaintiffs are unable to litigate the merits of their claims.

The Court next examines the merits of the substantive claims and sufficiency of the Complaint and finds that the second and third Eitel factors favor judgment for Plaintiff.

A trust for employee health or pension benefits is a contract governed by ERISA. See 29 U.S.C. § 1001 et seq., as amended. ERISA requires that the assets of employee benefit plans be held in trust pursuant to a written trust agreement. Id. at §§ 1102(a), 1103(a). The language of a trust agreement defines the rights and obligations of the parties to the trust to the extent they are consistent with ERISA. Id. at § 1145; Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp., 920 F.2d 1491, 1493–94 (9th Cir. 1990) (internal citations omitted). The U.S. Supreme Court has held that a trust agreement may provide trustees of an employee benefit plan with broad rights to audit employers' books and records, and that such rights are consistent with ERISA. Central States Southeast and Southwest Areas Pension Fund v. Central Transport Inc., 472 U.S. 559, 571–74 (1985). As a result, such audit rights are enforced in accordance with the terms of the trust agreement. Id. at 568.

In the Complaint, Plaintiffs adequately alleged that the Collective Bargaining Agreement and related Trust Agreements obligated Defendant to permit the Trusts and their agents to conduct audits of Defendant's payroll and related records in order to determine if fringe benefit contributions had been properly paid. Plaintiff has also presented sufficient evidence that Defendant failed to comply with the audit, thereby violating the terms of their agreement. Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp., 920 F.2d 1491, 1495 (9th Cir. 1990) ("We have already held that the Trustees' right to audit in this case is established by the Trust Agreement[.] The fact that the Trustees have no existing claim for contribution, nor any information that Miramar may not have made the required contributions is not an obstacle to the Trustees' right to audit in this case."); see also In Central States, 472 U.S. at 581 (finding that the

trustees had the right to audit, even though the trustees had neither a claim for delinquent contributions, nor did they allege that the employer breached its obligation to contribute). Plaintiffs sufficiently stated a claim for a violation of the Trust Agreements, and, therefore, the second and third Eitel factors weigh in favor of granting default judgment.

The Court next considers the fourth Eitel factor, the amount of money at stake. Plaintiffs request a default judgment of $24,268.65, consisting of $12,047.00 in audit fees and $12,221.65 in attorney's fees. Plaintiffs provide sufficient evidence demonstrating that the requested damages resulted from, and thus are proportional to, Defendant's failure to provide the records for the audit. Accordingly, the court finds the fourth factor weighs in favor of granting default judgment.

The Court finds that the fifth and sixth Eitel factors favor Plaintiff. Because Defendant has failed to plead or otherwise defend in this action, the court accepts the well-pleaded facts in the Complaint as true. See TeleVideo Sys. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987). As discussed earlier, Plaintiffs have adequately alleged that the Trust Agreements required Defendant to provide the records necessary for the audit, and Defendant failed to do so until after the filing of this action. Because Defendant has failed to oppose the motion, no factual disputes exist that would preclude the entry of default judgment. The sixth factor favors entry of default judgment when the defendant has been properly served or the plaintiff shows that the defendant is aware of the lawsuit and failed to answer. Meadows v. Dominican Republic, 817 F.2d 517, 521 (9th Cir. 1987). Plaintiffs properly served Defendant with the Complaint and a copy of the Motion for Default Judgment. Given the notices delivered to Defendant regarding this action and the period of time that has elapsed since the Plaintiffs filed the Complaint, the possibility of excusable neglect is remote.

Finally, the seventh factor requires the Court to account for the strong policy of favoring decisions on the merits. Here, Defendant's failure to appear or respond suggests that a decision on the merits is not a possibility. Furthermore, under Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed when a defendant fails to defend an action.

In conclusion, the court finds Eitel factors one, two, three, four, five, and six weigh in favor of an entry of default judgment and factor seven is not dispositive to the contrary. Accordingly,

because the Eitel factors favor an entry of default judgment, the court grants the Motion.

**D. Plaintiffs' Requested Relief**

Once liability is established by default judgment, the plaintiff must establish that the requested relief is appropriate. See Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977).

Plaintiffs seek $12,221.65 in attorney's fees and costs. "Title 29 U.S.C. § 1132(g) governs the award of attorney's fees in ERISA actions." Operating Eng'rs Pension Trust v. Cecil Backhoe Serv., Inc., 795 F.2d 1501, 1508 (9th Cir. 1986). ERISA empowers the Court, "in its discretion," to grant "reasonable attorney's fees and costs of action to either party." 29 U.S.C. § 1132(g)(1). Furthermore, the relevant Trust Agreements provide that Defendant shall pay "reasonable attorney's fees wherever legal action is required to collect contributions, reports or audit cooperation, without regard to [if] delinquency is ultimately established."

In this case, Plaintiffs provided the declaration of Plaintiffs' counsel, Michael A. Urban, in support of the fee request. Mr. Urban's Declaration indicates that at his firm partners bill $310 per hour, associates bill $225 per hour, and paralegals bill $125 an hour. The Ninth Circuit previously found rates between $375 and $400 reasonable for counsel in an ERISA action. See Welch v. Metro Life Ins. Co., 480 F.3d 942, 947 (9th Cir. 2007) (concluding "the requested fees of $375 and $400 per hour were established as being in line with prevailing community rates").

Plaintiffs also request $12,047 in audit fees. The Ninth Circuit has noted that "[b]ecause an award of audit costs to the prevailing party is consistent with the policy of encouraging full and fair contributions ... audit costs are recoverable under [section 1132(g)(2)]." Operating Eng'rs Pension Trust v. A-C Co., 859 F.2d 1336, 1343 (9th Cir. 1988). Because the Court finds this fee is reasonable and ERISA provides for an award of fees to the prevailing party such that the Court is not limited to taxable costs, see Grove v. Wells Fargo Fin. Cal., Inc., 606 F.3d 577, 580 (9th Cir. 2010), the Court thus awards Plaintiffs their audit fees.

**IV. CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that Plaintiffs' Motion for Entry of Default Judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs are awarded $12,221.65 in attorney's fees

and $12,047 in audit fees.

**IT IS FURTHER ORDERED** that the Clerk of the Court is instructed to enter judgment in favor of Plaintiff against Defendant National Convention Services.

**DATED:** January 3, 2025.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**